IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

R. CASPER ADAMSON, #290440,
    Plaintiff,

vs.                                                  Case No. 3:08cv179/MCR/EMT

CYNTHIA COURTNEY, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff, an inmate of the Florida penal system proceeding pro se, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed in forma pauperis (Docs. 1, 2).

       Plaintiff names eight Defendants in this action: Cynthia Courtney, Classification Supervisor at Santa Rosa Correctional Institution (SRCI); Mr. Haskins, Assistant Warden of Programs at SRCI; Colonel Barnes, a colonel at SRCI; Officer Workman, a State Classification Officer at SRCI; Walter A. McNeil, the Secretary of the Florida Department of Corrections (DOC); and Drs. Shams, Miller, and Rummel, all of whom are medical doctors at SRCI (Doc. 1 at 1–3). Plaintiff states that in August of 2006, following his conviction and sentence for sending a Christmas card containing foot powder to Judge Harvey Schlesinger, a District Judge in the United States District Court for the Middle District of Florida, Plaintiff was examined by Dr. Danziger and diagnosed with paranoid schizophrenia, antisocial personality disorder, and auditory hallucinations (*id.* at 5–6). Dr. Danziger opined that Plaintiff was extremely dangerous and unstable and recommended that Plaintiff be sent to a federal mental health facility in Butner, North Carolina (*id.* at 6). Instead, Plaintiff was returned to state custody and sent to SRCI (*id.*).

       The Institutional Classification Team (ICT) at SRCI, consisting of Defendants Courtney, Haskins, and Barnes, conducted a hearing to determine whether Plaintiff's classification status

should be upgraded from Close Management III (CM III) to Close Management I (CM I), the most restrictive custody status (*id.*). Plaintiff states he requested that the ICT consider Dr. Danziger's report, but they denied his request on the ground that it was irrelevant (*id.* at 6A). At the conclusion of the hearing, the ICT recommended that Plaintiff's status be upgraded from CM III to CM I (*id.* at 6A). Plaintiff states that Defendant Workman approved the recommendation without personally interviewing him (*id.* at 6A).

Plaintiff additionally alleges that he submitted a request to Dr. Shams requesting transfer to a mental health facility as recommended by Dr. Danziger, but Dr. Shams denied the request on the ground that Plaintiff was being appropriately treated at SRCI (Doc. 1 at 6B). Plaintiff states that his treatment consisted of seeing a counselor for ten minutes each week and seeing Dr. Shams once a month, but he was not taking medication because Secretary McNeil had removed Zyprexa and Seraquel from the drug formulary, which were the only two medications that were helpful to Plaintiff (*id.*). Plaintiff alleges that Dr. Miller agreed with Dr. Shams' denial of Plaintiff's request, and Defendants Haskins, Courtney, and McNeil upheld the decisions of the doctors (*id.*).

Additionally, Plaintiff states that on October 19, 2007, he was gassed with chemical agents three separate times and, as a result, declared a psychological emergency because he was hearing voices telling him to kill himself (Doc. 1 at 6C). A nurse called Dr. Rummel at his home, but Rummel ordered Plaintiff to be returned to his cell without mental health treatment (*id.* at 6C–6D). Several hours later, Plaintiff declared a second psychological emergency, claiming that he was hearing voices telling him to kill himself (*id.* at 6D). The nurse again called Dr. Rummel at home, but Plaintiff was returned to his cell without mental health treatment (*id.*). Plaintiff then began cutting himself with a piece of metal; Officer Gainer confiscated the metal and took Plaintiff to the medical department (*id.*). A nurse called Dr. Rummel at home, and Plaintiff was placed in a shower while his cell was searched (*id.*). While in the shower, he began cutting himself with a piece of metal hidden in his mouth (*id.* at 6D–6E). Dr. Rummel then ordered Plaintiff to be placed in a medical strip cell on suicide observation (*id.* at 6E).

Plaintiff states he is now in a solitary cell all of the time, except when he showers three times per week (Doc. 1 at 6H). He does not watch television and cannot afford a radio (*id.*). His only human contact is with staff and five inmates with whom he communicates via a ventilation duct

(*id.*). He is not taking medication, infrequently sees his mental health counselor, and refuses to "subject himself to the sarcasm and ridicule" of Dr. Shams (*id.* at 6H–6I). Plaintiff states that on a daily basis he hears voices telling him to kill himself and others (*id.* at 6H). He states his mental health is deteriorating, and it is becoming increasingly difficult to ignore the voices (*id.*).

Plaintiff claims the following constitutional violations: (1) Defendants Courtney, Haskins, and Barnes violated his due process rights by refusing to consider Dr. Danziger's report during the ICT hearing; (2) Defendant Workman violated his due process rights by upgrading his classification status without personally interviewing him; (3) Defendants Shams and Miller violated his Eighth Amendment rights by denying his requests for transfer to a facility for inpatient treatment; (4) Defendant Rummel violated his Eighth Amendment rights by failing to treat Plaintiff when he declared psychological emergencies on October 19, 2007, and instead returned Plaintiff to his cell, thereby permitting security staff to attack Plaintiff; (5) Defendants Courtney, Haskins, Barnes, Workman, and McNeil violated his Eighth Amendment rights by upgrading his custody status instead of recommending inpatient treatment; (6) Defendant McNeil violated his Eighth Amendment rights by removing Zyprexa and Seraquel from the drug formulary list; and (7) Defendants are violating the Americans with Disabilities Act by denying him access to programs and privileges because of his mental illness (*id.* at 6A–6H, 7). As relief, Plaintiff seeks a change in his custody status, transfer to an inpatient mental health facility, and monetary damages (*id.* at 7).

The court takes judicial notice of three cases previously filed by Plaintiff in the federal courts: (1) <u>Adamson v. Mount, et al.</u>, Case No. 2:00cv74-RAL (M.D. Fla. Feb. 25, 2000); <u>Adamson v. Mount, et al.</u>, Case No. 2:00cv92-HES (M.D. Fla. Mar. 22, 2000), and <u>Adamson v. Singletary</u>, No. 5:94cv50162-LC (N.D. Fla. Jan. 6, 1995).[1] Plaintiff was incarcerated at the time of filing each of those cases, as his address of record was a penal institution, and his address did not change during the course of the litigation. Additionally, the cases filed in the Middle District were dismissed by the district court on the ground that they failed to state a claim upon which relief may be granted, and the case filed in the Northern District was dismissed as frivolous.

---

[1] The inmate number of the plaintiffs in the Middle District cases is the same as Plaintiff's inmate number. Plaintiff acknowledges that he was the plaintiff in the Northern District case (*see* Doc. 1, attached list of cases).

Case No. 3:08cv179/MCR/EMT

Pursuant to the "three strikes" provision of the Prison Litigation Reform Act:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

In the instant case, Plaintiff is clearly still a prisoner, and the instant civil rights action concerns the conditions of his confinement. Furthermore, his three prior cases, identified *supra*, qualify as "strikes" under § 19159(g); indeed, Plaintiff has been recognized as a "three striker" in the United States District Court for the Southern District of Florida (*see* Adamson v. Donovan, et al., Case No. 2:00cv14238-DLG (S.D. Fla. Aug. 31, 2000)). Therefore, the issue before the court is whether Plaintiff qualifies under the "imminent danger of serious physical injury" exception and, thus, entitled to proceed in forma pauperis.

Circuit court cases have been helpful in determining what a prisoner with three strikes must show in order to be allowed to proceed in forma pauperis. According to the Eleventh Circuit, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), "the issue is whether [the] complaint, as a whole, alleges imminent danger of serious physical injury." Accordingly, when determining whether a plaintiff has met his burden of proving that he is in imminent danger of serious physical injury, the court must look to the complaint, which must be construed liberally and the allegations of which must be accepted as true. *See id.*; Jackson v. Reese, 608 F.2d 159, 160 (5th Cir. 1979); McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002). General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g). Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). The plaintiff must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," *id.*, and vague allegations of harm and unspecific references to injury are insufficient. White v. State of Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998). A claim by a prisoner that he faced a past imminent danger is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger

exception.  Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing of his complaint); *see also* Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate.").  Moreover, "imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed.  *See* Abdul-Akbar v. McKelvie, 239 F.3d 307, 213 (3d Cir. 2001).

In the instant case, the facts alleged by Plaintiff do not show that he is suffering ongoing serious physical injury, nor do they allege a likelihood of imminent serious physical injury. Although a threat of Plaintiff physically harming himself existed on October 19, 2007, the threat ceased to exist when Plaintiff was placed in a medical strip cell on suicide observation.  Plaintiff does not allege he has suffered physical injury since then, nor do the facts suggest that a threat of serious physical injury is imminent.  Because the facts do not suggest that Plaintiff's current conditions of confinement pose an imminent threat of serious physical injury, he does qualify under the imminent danger exception to § 1915(g).  Accordingly, he may not proceed in forma pauperis. A prisoner who is no longer entitled to proceed in forma pauperis must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice.  Dupree v. Palmer, 284 F.3d 1234 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001).

Accordingly, it is respectfully **RECOMMENDED**:

1. That pursuant to 28 U.S.C. § 1915(g), this cause be **DISMISSED without prejudice** to Plaintiff's initiating a new cause of action accompanied by payment of the $350.00 filing fee in its entirety.

2. That all pending motions be **DENIED as moot**.

At Pensacola, Florida, this 6th day of May 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**